# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

VINCENT TURNER,

    Petitioner,

vs.

HOWARD SKOLNIK, et al.,

    Respondents.

Case No. 3:09-cv-00219-RCJ-RAM

**ORDER**

Before the court are the first amended petition for writ of habeas corpus (ECF No. 15)[1] and respondents' answer (ECF No. 102). The court finds that relief is not warranted, and the court denies the petition.

Throughout this order, the court cites to exhibits that respondents filed in support of their first motion to dismiss, at ECF No. 21 through ECF No. 25. These docket entries have a problem. Every docket number is one greater than the attachment number seen on the docket report. For example, Exhibit A is shown as attachment #1 to ECF No. 21, but its docket number is ECF No. 21-2. Respondents' supplemental exhibits, at ECF No. 103 and ECF No. 104, do not have this problem. The court will refer to all exhibits by their docket numbers because the docket numbers are what appears on the pages of the documents.

---

[1] Petitioner later filed another petition, also styled as a first amended petition (ECF No. 81). The court construed it as a supplement to ground 1 of the earlier first amended petition. ECF No. 91. Because ground 1 has been dismissed, the later-filed first amended petition plays no role in this order.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

The court has found that petitioner has not exhausted grounds 1, 2, and 5. ECF No. 91. The court dismissed those grounds upon petitioner's motion. ECF No. 96. Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for grounds 1, 2, and 5.

In ground 3, petitioner alleges that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment. On cross-examination of North Las Vegas Police Detective James Jackson, petitioner tried to ask Jackson about statements that Darryl Fuller made to him. The trial court did not allow those questions because they were argumentative and called for hearsay. Ex. HH, at 432-37 (ECF No. 23-9, at 34-39). Fuller was petitioner's co-defendant, and he had accepted a plea bargain. On this issue, the Nevada Supreme Court held:

> Second, Turner contends that the district court violated his Sixth Amendment right to confront and cross-examine witness by limiting his cross-examination of Detective Jackson with respect to out-of-court statements contained in Det. Jackson's arrest affidavit and with respect to his investigation generally. We disagree. We conclude that the trial court, in its discretion, properly limited the cross-examination while still allowing the defense to present "facts from which . . . jurors could appropriately draw inferences relating to the reliability of the witness." Delaware v. Van Arsdall, 475 U.S. 673[, 680] (1986) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)); see also Atkins v. State, 112 Nev. 1122, 1127, 923 P.2d 1119, 1123 (1996) (trial courts are vested with considerable discretion in determining relevance and admissibility of evidence).

Ex. XX, at 1-2 (ECF No. 24-7, at 17-18). This was not some mechanical application of the hearsay rule that defeated the ends to justice. The trial court proposed a solution to petitioner: Call Darryl Fuller to testify and be subject to cross-examination. Ex. HH, at 435-36 (ECF No. 23-9, at 37-38).[2] Under these circumstances, the Nevada Supreme Court reasonably applied Van Arsdall.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 3.

In ground 4, petitioner alleges that the trial court erred when it denied his motion to suppress his statements without an evidentiary hearing to determine whether petitioner was competent to

---

[2]Fuller was unwilling to cooperate with the defense. The defense decided not to risk calling him as a witness. Ex. JJ, at 548-51 (ECF No. 23-13, at 5-8).

waive his privilege against self-incrimination, even though petitioner was given the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). On this issue, the Nevada Supreme Court held:

> Finally, Turner contends that the district court erred in denying his motion to suppress his confession without an evidentiary hearing. We disagree. We conclude that the district court's ruling is supported by substantial evidence indicating that there was no police coercion and that Turner was competent to waive his Miranda rights. See Colorado v. [Connelly], 479 U.S. 157, 170 (1986) (holding that Fifth Amendment right protected by Miranda is not concerned with "moral and psychological pressures to confess emanating from sources other than official coercion."); United States v. Glover, 596 F.2d 857, 864-66 (9th Cir. 1979) (affirming district court's decision that defendant with an IQ of 67 was competent to make Miranda waiver where there was other evidence of competency); see also Echavarria v. State, 108 Nev. 734, 743, 839 P.2d 589, 595 (1992) (holding that the question of admissibility of a confession is primarily a factual question addressed to the district court, whose determination will not be disturbed on appeal so long as it is supported by substantial evidence).

Ex. XX, at 2 (ECF No. 24-7, at 18). Detective Jackson testified about his interview with petitioner. Petitioner, who was in custody in the Clark County Detention Center on another matter, called an investigator of the Las Vegas Metropolitan Police Department, stating that he had information about the murder of Marnie Hickman. That investigator contacted Detective Jackson of the North Las Vegas Police Department, in which jurisdiction the murder occurred. The investigator also must have given petitioner Detective Jackson's name, because petitioner himself called Jackson before Jackson could contact petitioner. Jackson told petitioner over the phone that he wanted to speak with petitioner in person. Jackson went to the Clark County Detention Center, picked up petitioner, and brought him to the North Las Vegas Police Department. Supp. Ex. 1, at 38-40 (ECF No. 103-1, at 39-41). At the North Las Vegas Police Department, Jackson verbally advised petitioner of his Miranda rights. Jackson also gave petitioner a card printed with the Miranda rights. Petitioner waived his rights. Jackson also told petitioner that petitioner could stop talking with him at any time. Petitioner expressed remorse for what had happened to Hickman, and he wanted to talk about it. Ex. HH, at 360-67 (ECF No. 23-8, at 3-10).

Although petitioner does not make coercion an issue, the court notes that the Nevada Supreme Court reasonably concluded that there was no official coercion.

Petitioner's main issue is that he was not competent enough to realize what he was doing. Perhaps one could argue that, in spite of Jackson's efforts to make sure that petitioner knew that his

1  statement was voluntary, an unintelligent person like petitioner would have felt some subtle
2  compulsion. However, that argument does not take into account what happened before petitioner
3  went to the North Las Vegas Police Department. Jackson did not seek out petitioner for a statement.
4  Petitioner called the police on his own initiative twice. The first time, petitioner called the wrong
5  police department, and then, after being told of the error, petitioner called the correct police
6  department. The Nevada Supreme Court reasonably could have concluded that a person who did
7  that was competent enough to waive his right to be silent.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for ground 4.

Ground 6 contains claims of ineffective assistance of trial counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 105 (2011) (citations omitted).

In ground 6(A), petitioner claims that counsel failed to disclose to petitioner a favorable pre-trial offer of a plea bargain. On this issue, the Nevada Supreme Court held:

> First, Turner claims that his trial counsel was ineffective for failing to inform him of a favorable pretrial plea bargain. Appellant failed to demonstrate that trial counsel's performance was deficient. The only evidence offered in support of this claim was Turner's affidavit stating his belief that such an offer was available. Such a "bare" allegation is insufficient to support a claim for post-conviction relief. . . . Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 8-9 (ECF No. 25-10, at 11-12) (citation omitted). Petitioner did not give any evidence that an offer for a plea bargain ever existed. See Ex. NNN, at 19-20 (ECF No. 25-3, at 20-21). The Nevada Supreme Court reasonably concluded that petitioner had failed to prove ineffective assistance of counsel.

In ground 6(B), petitioner claims that counsel failed to call Dr. Harrie Hess to testify about petitioner's limited mental capabilities. Dr. Hess testified as a defense witness in petitioner's first trial.[3] Counsel decided not to call Dr. Hess in the second trial. Ex. JJ, at 548 (ECF No. 23-13, at 5). On this issue, the Nevada Supreme Court held:

> Second, Turner claims that his trial counsel was ineffective for failing to call psychologist Dr. Harrie F. Hess to testify regarding Turner's diminished mental capacity. Turner failed to demonstrate that trial counsel's performance was deficient. Dr. Hess conducted a psychological evaluation of Turner prior to Turner's first trial and concluded that he was competent to stand trial. However, Dr. Hess found that he had an IQ of 69, placing him at the top of the intellectual range of mild mental retardation. Dr. Hess testified at Turner's first trial that this mild mental retardation made Turner more susceptible to influence from others and should be considered a mitigating factor affecting his culpability.
>
> Prior to Turner's second trial, he was examined by psychiatrist Dr. Thomas Bittker, who was prepared to rebut Dr. Hess's testimony that a defense of diminished capacity was warranted. Dr. Bittker's report gave several reasons for his conclusions, including that Turner did not meet the full criteria for mild mental retardation and his intellectual deficits were not unlike that of many other convicted felons. Thus, Bittker concluded that Turner's intellectual deficits were not sufficient to warrant holding him less accountable than other individuals for participation in a crime.
>
> Turner's counsel decided not to call Dr. Hess at the second trial. Counsel "has the immediate—and ultimate—responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop." . . . In the context of claims of ineffective assistance of counsel, "'a tactical decision . . . is virtually unchallengeable absent extraordinary circumstances.'" . . . Here, not only did Dr. Hess testify at Turner's first trial, which resulted in conviction, but Dr. Bittker was prepared to rebut all of Dr. Hess's assertions at the second trial. And there is nothing in the record demonstrating extraordinary

---

[3] In the first trial, petitioner was convicted of conspiracy to commit robbery, robbery with the use of a deadly weapon, burglary, and first-degree murder with the use of a deadly weapon. The Nevada Supreme Court reversed the conviction and remanded for a new trial because it determined that the trial judge should have recused himself. Ex. U (ECF No. 22-8, at 1-12).

-6-

circumstances justifying a challenge of defense counsel's tactical decision not to call Dr. Hess as a witness at Turner's second trial. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 9-10 (ECF No. 25-10, at 12-13) (citations omitted). The court agrees with respondents. Dr. Hess' testimony at the first trial did not persuade the jury, and the state did not present any rebuttal testimony at that trial. On the second trial, the state was prepared with rebuttal testimony if Dr. Hess testified. The Nevada Supreme Court reasonably concluded that counsel made a valid decision not to call Dr. Hess to keep that rebuttal testimony out of evidence.

In ground 6(C), petitioner claims that counsel failed to move for a mistrial after the prosecution continued to refer to petitioner's fear of returning to prison. On this issue, the Nevada Supreme Court held:

> Fourth, Turner claims that trial counsel was ineffective for failing to move for a mistrial after the prosecutor referred to a prior bad act. Turner failed to demonstrate prejudice. During a police interview, Turner told police that he was "scared at the thought of going back to prison." Turner's statement was ruled admissible at trial, but the word "back" was redacted from the statement in order to avoid reference to the fact that Turner had been previously convicted. During closing argument, the prosecutor stated that Turner told police he was "afraid to go back to prison." Defense counsel objected on the ground that the prosecutor had mischaracterized Turner's statement. The district court sustained the objection and asked the jury to disregard it. The prosecutor then stated, "I am going to quote it so I get it right, 'I was still scared at the thought of going to prison.'"
>
> Here, the jury was instructed to disregard the prosecutor's improper statement, and "this court generally presumes that juries follow district court orders and instructions." . . . Moreover, there is nothing to indicate that the jury considered the use of the word "back" as anything other than a mistake. Defense counsel referred to the statement as a mischaracterization and the prosecutor's statement that he would "quote it, so I get it right" implied that he had misspoken. Accordingly, Turner failed to demonstrate a reasonable probability that a motion for mistrial would have been granted by the district court. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 10-11 (ECF No. 25-10, at 13-14) (citation omitted). The prosecutor erred. The defense objection, and the reason for the objection, as well as the prosecutor stating that he will quote petitioner to get it right, made the error look like a mistake. The Nevada Supreme Court reasonably concluded that petitioner did not receive ineffective assistance of counsel because counsel objected and did not move for a mistrial.

In ground 6(D), petitioner claims that counsel failed to develop a diminished-capacity defense. On this issue, the Nevada Supreme Court held:

> Third, in a related claim, Turner asserts that his trial counsel was ineffective for failing to develop a defense of diminished capacity. Appellant failed to demonstrate that trial counsel's performance was deficient. "[T]he technical defense of diminished capacity is not available in Nevada." Crawford v. State, 121 Nev. 744, 757, 121 P.3d 582, 591 (2005). Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 10 (ECF No. 25-10, at 13). Given that a diminished-capacity defense does not exist in Nevada, the Nevada Supreme Court reasonably concluded that counsel did not perform deficiently by not developing a non-existent defense.

In ground 6(E), petitioner claims that counsel failed to move for mistrial when the prosecutor argued victim impact in the opening statement to the jury. On this issue, the Nevada Supreme Court held:

> Fifth, Turner claims that trial counsel was ineffective for failing to move for a mistrial after the prosecutor argued "victim impact" during opening statements. Turner failed to demonstrate that trial counsel's performance was deficient. The prosecutor stated that the victim, Marnie Hickman, "was somebody's daughter, she was a mother." Defense counsel objected, and the district court overruled the objection. Later in the opening statement, the prosecutor described the victim's brother's failure to reach her on the phone by stating that "[h]e has no idea that his sister, a woman that he loved, lies dead in her own apartment." Turner argues that these two statements constitute highly prejudicial victim impact testimony. We conclude that these descriptions of the victim and the circumstances of her death do not constitute victim impact statements. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 11 (ECF No. 25-10, at 14).

> [I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' . . . The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' . . . Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."

Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting, inter alia, Donnelly v. DeChristoforo, 416 U.S. 637, 642, 643 (1974)). This court does not see how a comment that Hickman was a daughter and a mother, and a comment that Hickman's brother did not know that she was dead, is a victim-impact statement. Nothing in those statements reveals the consequences that those people encountered because of Hickman's death. To that extent, the Nevada Supreme Court reasonably concluded that counsel did not provide ineffective assistance when counsel did not move for a mistrial. Furthermore, the court agrees with respondents that given the evidence against petitioner, such comments by the prosecutor would not have made the trial fundamentally unfair.

In ground 6(F), petitioner claims that counsel failed to object to the prosecutor eliciting testimony that petitioner had not called Secret Witness. On this issue, the Nevada Supreme Court held:

> Sixth, Turner claims that his trial counsel was ineffective for failing to object to testimony that Turner had not called Secret Witness to report Hickman's murder. Turner failed to demonstrate that trial counsel's performance was deficient. During opening statements, defense counsel argued that Turner "called the Secret Witness Program, he voluntarily called them because it was 'eating him up.'" During the State's case-in-chief, Las Vegas Metropolitan Police Department Detective James Jackson testified that no one had contacted Secret Witness with regard to the case, effectively rebutting defense counsel's statement. Turner claims that the testimony was an improper comment on his right to remain silent. We disagree. Detective Jackson's statement that no one had called Secret Witness about the case did not implicate Turner's right to remain silent because a prosecutor is only prohibited from commenting on a defendant's post-arrest silence. See, e.g., Doyle v. Ohio, 426 U.S. 610, 616-20 (1976) (use of defendant's silence for impeachment purposes, after defendant received Miranda warnings, violated due process clause); Washington v. State, 112 Nev. 1054, 1059-60, 921 P.2d 1253, 1256–57 (1996) (Constitution prohibits comment about defendant's post-arrest silence). Moreover, Turner opened the door for the evidence when he claimed during opening statements that he had called Secret Witness to report Hickman's murder. The State was entitled to rebut defense counsel's claims of what the evidence would show. Cf. Colley v. State, 98 Nev. 14, 16, 639 P.2d 530, 532 (1982) (permitting normally impermissible comment on failure to present a defense witness where defendant had previously claimed the witness could provide an alibi). Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 12 (ECF No. 25-10, at 15).[4] The Nevada Supreme Court reasonably concluded that petitioner did not receive ineffective assistance by counsel not objecting, because Detective Jackson's testimony was a rebuttal to the defense's opening statement.

In ground 6(G), petitioner claims that counsel's inept cross-examination of Detective Jackson let the jury perceive that the defense was not credible. On this issue, the Nevada Supreme Court held:

> Seventh, Turner claims that trial counsel was ineffective for conducting improper questioning of Detective Jackson. He further claims that his counsel's actions resulted in frequent judicial correction in the presence of the jury and thus diminished trial counsel's credibility. [n.2: Inasmuch as Turner alleges misconduct on the part of the district court, that claim should have been raised on direct appeal and is procedurally barred. NRS 34.810(l)(b)(2).] Turner failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced. Our review of the record does not reveal misconduct. Turner cites to several instances of purportedly improper questioning. The cited portion of the record reveals twelve objections made by the State during a particularly intense cross-examination

---

[4]The Nevada Supreme Court incorrectly identified Jackson as a detective of the Las Vegas Metropolitan Police Department. Jackson was a detective of the North Las Vegas Police Department.

>regarding the progress of Jackson's investigation. Nine of the objections were sustained, two were overruled, and one was resolved in an unrecorded bench conference. None of the sustained objections were the result of egregious behavior by defense counsel. [n.3: Of the nine questions to which the district court sustained objections, two were argumentative, one asked for hearsay, one was vague, one had been asked and answered, and four called for speculation.] Moreover, the cited portion of the record reveals only one instance in which the district court sua sponte interrupted defense counsel. [n.4: The record reflects that the district court interrupted defense counsel after counsel incorrectly recited the court's ruling. The district court stated, "Counsel, that's a mischaracterization of the court's ruling, would you please keep your editorial comments to yourself."] Turner failed to demonstrate a reasonable probability that but for counsel's cross-examination of Detective Jackson the result of trial would have been different. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 12-13 (ECF No. 25-10, at 15-16). Habeas corpus petitioners often claim that counsel were not aggressive enough: They did not object to objectionable questions on direct examination, and they did not ask tough questions on cross-examination. This claim is the opposite: By being too aggressive on cross-examination, by asking questions that could lead to sustained objections, petitioner claims that his counsel was ineffective. However, at least one of these objections is related to ground 3. Counsel tried to put the statement of Darryl Fuller before the jury without calling Fuller, who would not have been cooperative. The Nevada Supreme Court was correct that none of the sustained objections were for egregious misconduct by counsel. It reasonably concluded that petitioner had failed to show prejudice.

Ground 6(H)[5] has two components. First, petitioner claims that counsel should have interviewed Darryl Fuller and compelled him to testify at trial. Second, petitioner claims that he himself should have been allowed to testify at trial. On these issues, the Nevada Supreme Court held:

>Finally, Turner claims that his trial counsel was ineffective for failing to prepare his coconspirator, Darryl Fuller, to testify. Turner failed to demonstrate that counsel's performance was deficient or that he was prejudiced. As stated above, in the context of claims of ineffective assistance of counsel, "a tactical decision . . . is virtually unchallengeable absent extraordinary circumstances." . . . Fuller had previously pleaded guilty to first-degree murder and robbery in relation to the events for which Turner was on trial. The record indicates that Turner's trial counsel met with Fuller and determined that it was not in Turner's best interest that Fuller testify. Specifically, trial counsel stated, "When our investigator went out to Jean last week in order to talk to him, Mr. Fuller was more cooperative, today when I went over there he just wanted something from me and I couldn't give him anything, he basically wanted to take the stand and litigate his appeal." Counsel

---

[5]This ground is mis-labeled as a subpart (A) to ground 6(G).

-10-

> also stated, "We decided that it would not be in Mr. Turner's best interest, so we made a tactical decision not to call Darryl Fuller today." Other than speculating as to Fuller's possible testimony, Turner has not demonstrated "extraordinary circumstances" that would justify a challenge of trial counsel's tactical decision.
>
> Turner further argues that if Fuller was not allowed to testify then he should have been allowed to testify on his own behalf. The record reflects that Turner was thoroughly canvassed regarding his right to testify, and he chose not to exercise that right. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 13-14 (ECF No. 25-10, at 16-17) (citation omitted). Defense counsel, the prosecutor, and the court discussed whether Fuller would testify. Fuller either was appealing from the judgment of conviction resulting from his guilty plea, or he was pursuing post-conviction relief. The prosecutor told Fuller and defense counsel that Fuller would have use immunity if he testified at petitioner's trial. Defense counsel's comments were quoted in the Nevada Supreme Court's decision. Ex. JJ, at 548-51 (ECF No. 23-13, at 5-8). If counsel understood that Fuller "wanted to take the stand and litigate his appeal," then Fuller likely would have tried to place all the blame upon petitioner. The Nevada Supreme Court reasonably concluded that counsel had made a valid tactical decision not to call Fuller as a witness.

The state district court canvassed petitioner about his right to testify and made certain that petitioner understood it was his own decision whether to testify. Ex. JJ, at 547-49 (ECF No. 23-13, at 4-6). The Nevada Supreme Court reasonably concluded that petitioner had not shown ineffective assistance of counsel regarding his decision not to testify.

Reasonable jurists would not find the court's conclusions on ground 6 to be debatable or wrong, and the court will not issue a certificate of appealability for ground 6.

Ground 7[6] contains claims of ineffective assistance of appellate counsel. "A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." Evitts v. Lucey, 469 U.S. 387, 396-397 (1985). Appellate counsel need not raise every non-frivolous issue on appeal to be effective. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). A claim of ineffective assistance of appellate counsel is evaluated the

---

[6]This ground is mislabeled as ground 6.

-11-

same way that a claim of ineffective assistance of trial counsel is evaluated. Miller v. Keeney, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

In grounds 7(A) and 7(B), petitioner claims that (A) appellate counsel failed to raise a claim of improper victim-impact statements by the prosecutor, and (B) appellate counsel failed to raise a claim of the prosecutor's statement that petitioner was afraid to go back to prison. The Nevada Supreme Court addressed both of these issues in the same paragraph:

> Turner claims that appellate counsel was ineffective for failing to raise claims of prosecutorial misconduct on direct appeal. Specifically, he argues that appellate counsel was ineffective for failing to raise the issue of the prosecutor's argument of "victim impact" during his opening statement. Turner failed to demonstrate prejudice. As explained above, even if appellate counsel had raised the matter on appeal, a different result was not reasonably probable. Turner also claims that appellate counsel was ineffective for failing to raise the issue of the prosecutor's reference to Turner's fear of returning to prison. Again, as explained above, we conclude that even if appellate counsel had raised the matter on appeal, a different result was not reasonably probable. Therefore, the district court did not err in summarily denying these claims.

Ex. UUU, at 15 (ECF No. 25-10, at 18). Grounds 6(C) and 6(E) are the corresponding claims of ineffective assistance of trial counsel. Given that the Nevada Supreme Court found that those claims were without merit, it reasonably could have concluded that petitioner had not shown a reasonable probability of a different result on direct appeal had appellate counsel raised these issues.

Petitioner also claims in ground 7(A) that appellate counsel failed to raise on direct appeal the denial of petitioner's motion to exclude a photograph of Marnie Hickman with her one-year-old child. On this issue, the Nevada Supreme Court held:

> Third, Turner claims that his appellate counsel was ineffective for failing to raise a claim that the district court erred in denying his motion in limine to exclude a photograph of the victim with her one-year-old child. Turner argues that "there was no explanation for the reason the child was included in the identification of the deceased victim" and that the picture unduly influenced the jury. Appellant failed to demonstrate prejudice. The record reflects that it was the only picture, with the exception of autopsy and crime scene photos, available to the prosecution. In ruling on appellant's motion, the district court stated, "I don't find the fact that it shows the victim with her child, who happens to be in the picture, unduly prejudicial, in fact, I don't find it prejudicial at all." We concur that the mere presence of the deceased victim's child in the photo was not unduly prejudicial. Accordingly, appellant failed to demonstrate that this claim had a reasonable probability of success on appeal. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 17 (ECF No. 25-10, at 20) (footnote omitted). Given the evidence against petitioner, the Nevada Supreme Court reasonably concluded that petitioner suffered no prejudice from the presence of a child in the photograph.

The court addresses ground 7(D) out of the order of presentation. Petitioner claims that appellate counsel failed to raise a claim of cumulative error regarding for the same reasons as in ground 7(A). Having found no error, the Nevada Supreme Court reasonably could have concluded that there was no cumulative error, and that appellate counsel was not deficient by not raising such a claim.

In ground 7(C), petitioner claims that appellate counsel failed to raise a claim regarding an erroneous jury instruction that blurred the elements of willfulness, deliberation, and premeditation for first-degree murder. On this issue, the Nevada Supreme Court held:

> Next, Turner claims that appellate counsel was ineffective for failing to raise a direct appeal claim challenging the Kazalyn instruction given at trial. Kazalyn v. State, 108 Nev. 67, 825 P.2d 578 (1992), receded from by Byford v. State, 116 Nev. 215, 994 P.2d 700 (2000). While Turner's appeal was pending, this court decided Byford v. State, which disapproved of the Kazalyn instruction on the mens rea required for a first-degree murder conviction based on willful, deliberate, and premeditated murder, and provided the district courts with new instructions to use in the future. Byford, 116 Nev. at 233-37, 994 P.2d at 712-15. Byford was decided on February 28, 2000. Turner's direct appeal was decided on August 11, 2000. Turner v. State, Docket No. 33967 (Order Dismissing Appeal, August 11, 2000). Therefore, Turner's conviction was clearly not yet final when Byford was decided. See Colwell v. State, 118 Nev. 807, 820, 59 P.3d 463, 472 (2002) (stating that "[a] conviction becomes final when judgment has been entered, the availability of appeal has been exhausted, and a petition for certiorari to the Supreme Court has been denied or the time for such a petition has expired"); Sup. Ct. R. 13 (stating that petition for writ of certiorari to United States Supreme Court must be filed within 90 days after entry of judgment or order sought to be reviewed). This court recently held that Byford applies to cases that were pending on appeal at the time Byford was decided. Nika v. State, [198 P.3d 839, 124 Nev. 1272 (2008)]. Accordingly, as a matter of due process, the new rule announced in Byford applies to Turner. Id. at 22-23, 156 P.3d 691. Therefore, Turner's appellate counsel was deficient for failing to challenge the erroneous Kazalyn instruction.
>
> However, Turner fails to demonstrate that he was prejudiced. Instructional error is subject to harmless error review. Cortinas v. State, 124 Nev. 1013, [1026-27], 195 P.3d 315, 324 (2008). In this case, there was overwhelming evidence that Turner was guilty of felony murder. Turner confessed to the police that he conspired to commit the crimes that resulted in Marnie Hickman's death. Moreover, the jury found Turner guilty of the underlying crimes of conspiracy to commit robbery, robbery with the use of a deadly weapon, and burglary. By definition, the conspiracy conviction required the jury to find beyond a reasonable doubt that Turner had the specific intent to commit robbery. See Nelson v. State, 123 Nev., n. 37, 170 P.3d 517, 527 n. 37 (2007). Because the jury found that Turner intended to commit robbery, the fact that the robbery resulted in Hickman's death was all that was required for a conviction of first-degree murder. See Payne v. State, 81 Nev. 503, 505–06, 406 P.2d 922, 924 (1965); NRS 200.030. Accordingly, we are convinced "that the error complained of did

-13-

> not contribute to the verdict obtained." Cortinas, 124 Nev. at [1027], 195 P.3d at 324. Thus, Turner failed to demonstrate that a Byford claim had a reasonable probability of success on appeal; therefore, the district court did not err in denying this claim.

Ex. UUU, at 15-17 (ECF No. 25-10, at 18-20). In the same situation, involving the challenged Kazalyn instruction and evidence that the person was guilty under a theory of felony murder, the court of appeals has held that the use of the Kazalyn instruction was harmless. Babb v. Lozowsky, 719 F.3d 1019, 1033-35 (9th Cir. 2013), overruled on other grounds by Moore v. Helling, 763 F.3d 1011 (9th Cir. 2014). Given that the error was harmless, the Nevada Supreme Court reasonably concluded that petitioner did not demonstrate that he was prejudiced.

In ground 7(E), petitioner claims that appellate counsel failed to raise on direct appeal an issue that the prosecutor used peremptory challenges in a racially discriminatory manner. On this issue, the Nevada Supreme Court held:

> Finally, Turner claims that appellate counsel was ineffective for failing to raise a claim under Batson v. Kentucky, 476 U.S. 79 (1986), on direct appeal. Turner failed to demonstrate deficient performance or prejudice. There were four African-Americans on the prospective jury, one male and three females. The prosecutor exercised peremptory challenges against the African-American female jurors (jurors 2, 7, and 10). The defense objected to the State's use of its peremptory challenges and raised a claim pursuant to Batson. Id. at 96 (holding that government's exercise of peremptory challenges in racially discriminatory manner violates equal protection). The district court concluded that jurors 2 and 7 had been properly challenged, but rejected a peremptory challenge of juror 10.
>
> This court has previously adopted the three-step analysis set forth by the United States Supreme Court in Purkett v. Elem, 514 U.S. 765, 767 (1995), for consideration of a Batson claim. Kaczmarek v. State, 120 Nev. 314, 332, 91 P.3d 16, 29 (2004). First, "the opponent of the peremptory challenge must make out a prima facie case of discrimination." Ford v. State, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006). Next, "the production burden then shifts to the proponent of the challenge to assert a neutral explanation for the challenge." Id. Finally, "the trial court must then decide whether the opponent of the challenge has proven purposeful discrimination." Id. Here, the district court concluded that because the only three peremptory challenges exercised by the prosecution were directed at African-American women, the defense made a prima facie case of discrimination. Next, the district court concluded that the State had asserted a sufficient neutral explanation for each challenge. Finally, the district court found that the challenges of jurors 2 and 7 were appropriate but declined to permit the prosecution to exercise a peremptory challenge with respect to juror 10.
>
> In particular, juror number 2's son had recently been arrested and she felt that he was treated unfairly by law enforcement. Further, the district court noted that when she was excused "not only did she exhibit her enthusiasm for being excused, but she indicated her enthusiasm to the members of the remaining jury panel . . . which caused some laughter by the remaining jury panel members." In the district court's view, it was "quite possible . . . that she was looking for a reason to be excused from the jury."

> Juror number 7 stated that she had been the victim of previous crimes and that law enforcement had failed to provide her with sufficient protection. She further stated that she was reluctant to judge anyone because she was not perfect herself. The district court also noted that she displayed hostility toward the prosecution and that her body language raised legitimate concerns about her willingness to be fair to both sides.
>
> Finally, during voir dire juror number 10 stated, "My morals, what I consider right or wrong or I believe to be right or wrong takes precedence over what Nevada State says is law." However, after further questioning, she stated that even if she disagreed with the law, if she was sworn in as a juror she would follow the law and adopt it as it applies in the case. The district court stated that while there was justifiable concern after her first comments, "upon further inquiry . . . she indicated in this case she did not feel that there was any basis for . . . concern regarding her moral convictions and that she, upon taking her oath in this case, would follow her oath." The district court determined that while there was "some racially neutral context upon which the State could base its peremptory challenge," it was not satisfied that the challenge should be upheld and declined to permit the State to use a peremptory challenge against juror number 10.
>
> After review of the record, we conclude that Turner failed to demonstrate a reasonable probability that a Batson claim would have had success on appeal. Therefore, the district court did not err in summarily denying this claim.

Ex. UUU, at 17-20 (ECF No. 25-10, at 20-23). The Nevada Supreme Court's summary accurately reflects the hearing that the trial court held on the matter. Ex. Z, at 122-28 (ECF No. 22-14, at 10-16). Petitioner has failed to demonstrate how the Nevada Supreme Court's decision was an unreasonable application of Batson. Reasonable jurists would not find the court's conclusions on ground 7 to be debatable or wrong, and the court will not issue a certificate of appealability for ground 7.

IT IS THEREFORE ORDERED that the first amended petition for writ of habeas corpus (ECF No. 15) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this action.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: April 11, 2017.

_____
ROBERT C. JONES
United States District Judge